## Bickham *et al. versus* Smith.

1. The probabilities of motive and conduct may be proper subjects of inference for a jury from the circumstances of the parties at the time; but when the question is as to an *express* contract to pay a *specific* sum, the supposition of what it is probable the defendant might have thought of, and deducing from it that he agreed to give such sum, is error.

2. The plaintiff must prove his contract, and if there be none express, must show the value of his services.

3. A trust fund is not liable for services in defending the trustee against proceedings to declare him a lunatic.

May 17th 1867. Before WOODWARD, C. J., THOMPSON and AGNEW, JJ. STRONG and READ, JJ., absent.

In the court below A. Herr Smith, on the 22d of February 1866, commenced an action of assumpsit against Stephen G. Bickham and Sarah Bickham, trustees.

The following are the circumstances on which the action is founded.

Eugenia R. Bickham conveyed all her estate to the defendants in trust for certain purposes, amongst others the support of the trustees and their families for life. Afterwards, on the 17th of May 1862, S. G. Bickham was found to be a lunatic, a committee was appointed, and Bickham removed to the state asylum. The committee having received the trust funds, a proceeding in equity was commenced by the trustees to restrain him from converting them; a traverse to the inquisition of lunacy was also filed by S. G. Bickham. Messrs. Amwake & Alricks were the original counsel in these proceedings. By contract with the trustees, they were to receive $50 each as a retaining fee, and $200 if successful in the proceedings. The plaintiff was afterwards employed by the defendants, and received $50 as a " retaining fee," as appeared by his receipt given in evidence by the defendants. The proceedings were successful, and Messrs. Amwake & Alricks were paid the amounts agreed upon with them.

The plaintiff brought this suit to recover for his services, and claimed the same amount as was paid to the other counsel.

There was evidence of his employment by the defendants, of his diligent and laborious performance of services in the proceedings, but no evidence of an express contract for any specific amount.

The court (Hayes, A. J.), after stating the facts, charged :—

" In the absence of testimony, you are called upon to say what the plaintiff is entitled to for his services; and you will determine the question according to such evidence as you have. It may be regarded as a question of probabilities. Two counsel had been already employed before the plaintiff was engaged. It is in evidence that the defendants agreed to give him, and did pay him

[Bickham *v.* Smith.]

the same retainer that they had paid each of the other counsel. It appears then altogether probable that on the occasion of their calling upon Mr. Smith to employ him, they told him what they had paid the others as a retainer, and therefore agreed to pay him the same. Now with respect to his services in the several proceedings in which they employed him to assist, they either agreed to pay him the same contingent fee or something less—or nothing was said about it at all. What is the probability? We must suppose the plaintiff, when his services were required as counsel, to assist the two other counsel already employed, to have asked what compensation the defendants had agreed to give the others. This probability is strengthened by the fact that they subsequently paid him the same retainer as the others, of which they must therefore have told him. If they informed him of this retainer, would he have failed to inquire what further compensation they were to receive on the completion of the business? Is it probable that he should have dropped the inquiry at that point? or is it not more probable he should have said, 'Well, you give these gentlemen $50 each as a retainer, what are you to give them at the conclusion of these cases? What if they succeed?' These are the questions on which you will deliberate, and judge as to the probability deducible from the facts in evidence.

"If there was such a contract or agreement with the plaintiffs as the defendants made with Mr. Amwake and his colleague, you have heard what the amount was, and that would furnish a proper guide. But if there were no express contract, the services having been rendered by the plaintiff at the instance and request of the defendants, they would be equally bound to pay him the reasonable value of his services, and such value would be the proper measure of your finding; and the evidence of what the defendants contracted to give the others, with the evidence of all the facts and circumstances relative to his employment and his performances in this business, would be the proper means of forming your judgment as to what the plaintiff should receive."

The jury rendered a verdict for the plaintiff for $244.

The defendant took a writ of error, and assigned for error the charge of the court.

*S. H. Price,* for plaintiffs in error.

*D. G. Eshleman,* for defendant in error.

The opinion of the court was delivered, July 3d 1867, by

Agnew, J.—The judge in the court below committed a clear error in submitting it to the jury to find that a contract was made by the defendants below to pay Mr. Smith the same fee they had agreed to pay Messrs. Amwake & Alricks, without any

[Bickham v. Smith.]

evidence whatever of the fact. The probabilities of motive and conduct no doubt may become proper subjects of inference, on the part of a jury, from the circumstances surrounding parties at the time when called upon to decide upon their acts. But when, as here, the question is whether an express contract was made to pay a specific sum of money, to begin its proof by a mere supposition of what it was probable the defendants might have thought of, and to deduce from this supposition the fact that they did agree to give this specific fee, is carrying the doctrine of possibilities into a region of subtle conjecture from which nought but practical error can proceed. The probabilities, as the learned judge termed them (unfounded conjectures, rather), were but the merest guesses at what might have happened, but of which there is no evidence that it did take place. It was the business of the plaintiff to prove his contract, and if he had none express, then the value of the services rendered.

The question as to the liability of the trust estate for that portion of the services which had relation to the proceedings against Bickham individually, does not seem to have been raised in the court below; but as the case goes back for a second trial, it is proper to remark, that the trust fund in the hands of the trustees (as such) is not liable for services rendered in defending one of the trustees against a proceeding to declare him a lunatic. His lunacy was a personal matter, and did not involve the execution of the trust except indirectly, in so far as it might lead to his discharge as a trustee in the event of his being found a lunatic.

Bickham cannot charge the trust with the expense of defending his personal rights, and it would not be proper to produce this result by a verdict.

Judgment reversed, and a *venire facias de novo,* awarded.